Demarest v Village of Greenwich (2024 NY Slip Op 01140)

Demarest v Village of Greenwich

2024 NY Slip Op 01140

Decided on February 29, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 29, 2024

CV-22-1921
[*1]Rachael Demarest, Individually and as Administrator of the Estate of Joshua James Demarest, Deceased, Respondent,
v
Village of Greenwich et al., Appellants, et al., Defendants.

Calendar Date:January 8, 2024

Before:Garry, P.J., Pritzker, Lynch, Fisher and Powers, JJ.

FitzGerald Morris Baker Firth PC, Glens Falls (Joshua D. Lindy of counsel), for appellants.
Cullen and Dykman LLP, Albany (Christopher E. Buckey of counsel), for respondent.

Fisher, J.
Appeal from an order of the Supreme Court (Glen T. Bruening, J.), entered August 12, 2022 in Washington County, which partially denied certain defendants' motion for summary judgment dismissing the complaint against them.
In December 2016, plaintiff's infant child (hereinafter decedent) and a neighbor's child (hereinafter the surviving child; hereinafter collectively referred to as the children), seventh graders at the time, were playing on a snowbank in an otherwise empty lot owned by defendant Robert M. Sipperly located in the Village of Greenwich, Washington County (hereinafter the lot).[FN1] The snowbank was created by employees of the Department of Public Works (hereinafter the DPW) of defendant Village of Greenwich, which had an oral agreement with Sipperly that they could store excess snow on the lot. At approximately 3:15 p.m. on December 13, 2016, the children were playing on the backside of the snowbank in forts when a DPW employee in a front-end loader dumped at least two loads of snow on top of the snowbank and, consequently, on the children. After being trapped under the weight of the snow for approximately four hours, the children were discovered, dug out and transferred to an area hospital where decedent passed away as the result of his injuries.
Plaintiff, individually and as administrator of decedent's estate, served the Village with a notice of claim.[FN2] She then commenced this action asserting several causes of action for negligence and premises liability, seeking compensatory and punitive damages. Following joinder of issue by the Village and the completion of disclosure,[FN3] the Village moved for summary judgment dismissing the complaint on several grounds, including that it did not owe a duty to decedent and that it was not a substantial factor in causing decedent's injuries leading to his death. Plaintiff opposed the motion and Supreme Court, finding that the Village had failed to establish its prima facie entitlement to summary judgment, denied the Village's motion to that extent.[FN4] The Village appeals.
We affirm. Since "a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party" (Mizenko v Intertech Digital Entertainment, Inc., 204 AD3d 1151, 1152 [3d Dept 2022] [internal quotation marks and citations omitted]). "Although a contractual obligation generally does not give rise to tort liability in favor of a noncontracting third party, one exception to this principle applies, and creates a duty of care, where the contracting party, in failing to exercise reasonable care in the performance of its duties, launches a force or instrument of harm" (McEleney v Riverview Assets, LLC, 201 AD3d 1159, 1162 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Cavosie v Hussain, 215 AD3d 1080, 1082 [3d Dept 2023]). Consistent with that duty, the degree of reasonable care to be exercised "includes consideration [*2]of the known propensities of children to roam, climb, and play, often in ways that imperil their safety" (Sarbak v Sementilli, 51 AD3d 1001, 1002 [2d Dept 2008]; see Charles v Village of Mohawk, 128 AD3d 1477, 1478 [4th Dept 2015]; Dunbar v NMM Glens Falls Assoc., 263 AD2d 865, 865 [3d Dept 1999]; see also Leone v City of Utica, 66 AD2d 463, 466 [4th Dept 1979], affd 49 NY2d 811 [1980]). The scope of this "duty is measured in terms of foreseeability, which may only be determined as a matter of law where a single inference can be drawn from the undisputed facts" (Prusky v McCarty, 126 AD3d 1171, 1171 [3d Dept 2015] [internal quotation marks and citation omitted]). When specifically examined in the context of a premises liability matter involving children, "[w]hat accidents are reasonably foreseeable, and what preventative measures should reasonably be taken, are ordinarily questions of fact" (Sarbak v Sementilli, 51 AD3d at 1002).
Here, the deposition testimony from the superintendent of the DPW and Sipperly confirmed the existence of an agreement allowing the DPW to store excess snow on the lot. This practice had been ongoing for a number of years without Sipperly having to oversee or direct how the DPW employees carried out their work. Therefore, the inquiry shifted to whether the Village created an unreasonable risk of harm in the performance of its contractual obligations (see McEleney v Riverview Assets, LLC, 201 AD3d at 1163; Grady v Hoffman, 63 AD3d 1266, 1267 [3d Dept 2009]). In this regard, the Village submitted the transcripts of the deposition testimony of several DPW employees who described the general safety training that they received for the operation of heavy equipment, including creating safety zones, checking the surroundings and excluding the public from work zones. The testimony was that the majority of the DPW employees generally followed these principles. The superintendent also provided testimony regarding a "no trespassing" sign policy, aimed at preventing children from roaming and climbing on snowbanks in the lot. Other DPW employees also testified inconsistently regarding whether the sign policy was discretionary or mandatory, and who made such decision to deploy the signs. Indeed, at least one DPW employee testified that he had previously observed children playing on the snowbanks in the lot. In considering this testimony, the Village's expert engineer, Lawrence Levine, opined that operators of heavy equipment were not required to get out of their vehicles to check for the public in work zones — particularly in the winter months for snow removal where slippery conditions could present a danger for such operators. He further stated that there were no indications of children at the lot on the day of the accident, nor would they have been reasonably expected to be present given the remote location of the lot and the purported lack of a history of any children there. Relating to this point, it is undisputed in the record that [*3]the children were intentionally hiding from the DPW employees in forts dug into the back and top of the snowbank as part of a game to evade detection.
However, viewing the facts in the light most favorable to the nonmoving party, the record also demonstrates that on the day of the accident the DPW employees did not adhere to their safety training, establish a safe work zone or use the "no trespassing" signs on the snowbank. None of the DPW workers testified to inspecting the snowbank or the lot on the day of the accident. Despite the children leaving a rainbow sled there overnight, and the surviving child having testified that the trucks were "pretty tall" and a truck operator "probably could have seen the sled in [decedent's] fort," none of the DPW employees observed the sled from 7:00 a.m. when the first employee arrived at the lot to the time of the accident — a period of time over eight hours long and after approximately 20 loads of snow were delivered to the lot. This includes the DPW operator of the front-end loader, who testified that he did not get out of his heavy equipment to inspect the snowbank or the lot when he arrived after 3:00 p.m. Levine suggested that the "best view" of the snowbank was from the seat of the front-end loader, which was taller than the snowbank, and that there was no reason to get out to inspect the area because the children would have been "clearly visible" if they were not hiding. However, the surviving child testified that decedent was wearing an orange coat and in a roofless "castle" on the top of the snowbank when the snow was dumped onto them. This raises a question of whether decedent may have been visible if the operator of the front-end loader had the superior vantage point that Levine emphasized in his moving affidavit. This is particularly true because there was notice to the Village of children in the vicinity of the lot near the time of the accident, as established by a DPW employee operating a dump truck. Specifically, he testified that he observed the children walking on the side of the road near the lot and, after dumping a load of snow in the lot, he again observed the children on a residence's porch near the lot. All of this occurred within approximately 20 to 30 minutes of the accident, therefore raising a further question of fact as to foreseeability (see Prusky v McCarty, 126 AD3d at 1171).
To this end, there were no signs placed on the snowbank warning the children to not roam or climb on it. This was a known propensity, as children had been previously observed in the lot playing on the snowbanks — a point corroborated by the surviving child who testified that he had done so on previous occasions, including the day before the accident (see Charles v Village of Mohawk, 128 AD3d at 1478; Sarbak v Sementilli, 51 AD3d at 1002; Dunbar v NMM Glens Falls Assoc., 263 AD2d at 865; Leone v City of Utica, 66 AD2d at 466). At least one DPW employee also testified that he thought the signs should have been [*4]used on the day of the accident and that it was possible to have had the signs deployed before the children arrived home from school that afternoon. The Village attempts to discount its failure to use the signs to keep the children off the snowbank based on the surviving child's admission that, although he observed a dump truck going into the lot, the children still went to hide in their forts in the snowbank and that they did not move when they heard the vehicle moving closer to them. However, this misses the critical distinction that the children saw a dump truck, which had been unloading piles of excess snow throughout the lot during the day without disturbing the snowbank — and not the front-end loader, which ultimately scooped from the piles of excess snow and dropped it on the snowbank where the children were hiding; this was the first time in the record that the snowbank had been disturbed on the day of the accident.
To this point, the open and obvious nature of the snowbank was not the mechanism that caused the children's injuries, but rather the process of using the front-end loader to restack the piles of excess snow deposited in the lot. Nevertheless, plaintiff "was not required to demonstrate the foreseeability of the precise manner in which the accident occurred or the precise type of harm produced in order to establish the foreseeability component of her negligence claim" (Evarts v Pyro Eng'g, Inc., 117 AD3d 1148, 1151-1152 [3d Dept 2014] [internal quotation marks, brackets and citation omitted]).To the extent that the Village also claims that, notwithstanding the lack of signs, the children were still trespassers, "[i]t is well settled that a[n entrant's] status as [a] trespasser does not absolve [a party] of its duty to exercise reasonable care under all the circumstances" (Soich v Farone, 307 AD2d 658, 660 [3d Dept 2003]). Based on the foregoing, Supreme Court properly found that the Village failed to satisfy its "burden of eliminating all material issues of fact, and establishing conclusively that it did not launch a force or instrument of harm by negligently creating the dangerous or defective condition complained of" (McEleney v Riverview Assets, LLC, 201 AD3d at 1162 [internal quotation marks, ellipsis and citation omitted]; see Mizenko v Intertech Digital Entertainment, Inc., 204 AD3d at 1152; Parrinello v Independence Plaza SC, LLC, 189 AD3d 1441, 1444 [2d Dept 2020]).
Turning to the issue of proximate cause, the Village contends that the children are solely responsible for their own injuries. However, "it is settled that there may be more than one proximate cause of an accident" (Pineiro v Rush, 163 AD3d 1097, 1098 [3d Dept 2018] [internal quotation marks and citations omitted]; see generally Scurry v New York City Hous. Auth., 39 NY3d 443, 454-455 [2023]). "Given the unique nature of the inquiry in each case, proximate cause is generally an issue for the trier of fact, so long as the court has been satisfied that a prima [*5]facie case has been established and the evidence could support various reasonable inferences" (Turturro v City of New York, 28 NY3d 469, 483-484 [2016] [internal quotation marks and citations omitted]; see Palmatier v Mr. Heater Corp., 163 AD3d 1228, 1231 [3d Dept 2018]; see also Perkins v County of Tompkins, 179 AD3d 1334, 1336 [3d Dept 2020]; Dunbar v NMM Glens Falls Assoc., 263 AD2d at 866). The evidence in the record and the allegations set forth by plaintiff, if proven, could support various reasonable inferences, including that, regardless of the children hiding in the snowbank, the injuries sustained by the children were a reasonably foreseeable consequence of the failure to secure and inspect the lot considering the known presence of children near the lot shortly before the accident (see Cavosie v Hussain, 215 AD3d at 1085; MacDonald v City of Schenectady, 308 AD2d 125, 129 [3d Dept 2003]; Dunbar v NMM Glens Falls Assoc., 263 AD2d at 866; see generally Perkins v County of Tompkins, 179 AD3d at 1336). Accordingly, Supreme Court properly denied this branch of the Village's motion for summary judgment as well. We have examined the remaining contentions of the parties and have found them to be without merit or rendered academic.
Garry, P.J., Pritzker, Lynch and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Plaintiff also commenced an action against defendant Sipperly Contracting, Inc., who operated and maintained a business on the lot.

Footnote 2: In a separate proceeding represented by the same attorney as plaintiff, the father of the surviving child also served a notice of claim against the Village and commenced a negligence action against defendants. Similarly, the Village also moved for summary judgment in the context of that action, which is the subject of a companion appeal being handed down simultaneously herewith (Day v Village of Greenwich, ___ AD3d ___ [3d Dept 2024] [decided herewith]).

Footnote 3: Neither Sipperly nor Sipperly Contracting, Inc. joined issue and, other than submitting to an examination before trial, neither have otherwise participated in this litigation or appeal. The complaint also included as defendants some unknown employees of the Village; the Village is apparently representing them in this action, so our references to the Village as a party include those employees.

Footnote 4: The Village had also moved to dismiss plaintiff's claims for punitive damages, which was unopposed by plaintiff and granted by Supreme Court.